[Cite as *State v. Hall*, 2019-Ohio-633.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107197**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ARROYAL M. HALL**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-619151-B

**BEFORE:** Celebrezze, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** February 21, 2019

**ATTORNEY FOR APPELLANT**

Richard E. Hackerd
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Eben McNair
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113



FRANK D. CELEBREZZE, JR., J.:

{¶1}    Defendant-appellant, Arroyal Hall ("appellant"), brings the instant appeal challenging his guilty plea.    More specifically, appellant argues that his plea was not knowingly, intelligently, and voluntarily entered, and that his trial counsel was ineffective for failing to incorporate the plea agreement on the record at the change of plea hearing.    After a thorough review of the record and law, this court affirms.

### I.    Factual and Procedural History

{¶2} Appellant was indicted on July 14, 2017, for an incident stemming from a traffic stop conducted by Parma police officers on April 5, 2017.    Appellant was driving his vehicle and had two passengers with him, Kelvin Bunton ("Bunton"), and James Cargill ("Cargill").    As officers were conducting the traffic stop, they observed what appeared to be an open liquor bottle tucked into the rear pocket of the front passenger seat.    Officers instructed appellant to turn off

his vehicle, and appellant complied. While officers were asking appellant and the other occupants for identification, officers observed appellant's hands on a large plastic cup that was in the vehicle's center console. Officers then asked appellant if they could retrieve the open liquor bottle. Officers also asked appellant permission to search his vehicle for any further contraband. At this point, appellant turned his car back on and drove off.

{¶3} As officers were pursuing appellant's vehicle, they observed a large plastic cup thrown from the driver's side of appellant's vehicle. Officers observed the plastic cup hitting the street, and observed several items falling out of the plastic cup and scattered on the street. Officers later discovered these items to be 11 plastic baggies containing large quantities of cocaine. Officers eventually caught up to appellant's vehicle, and Bunton and Cargill were detained. Appellant fled from the vehicle, and officers were unsuccessful in locating him.

{¶4} Appellant, Bunton, and Cargill were collectively charged in a nine-count indictment. Counts 1, 4, 5, 6, 7, and 9 pertained to appellant. Appellant was charged with Count 1, trafficking in cocaine, in violation of R.C. 2925.03(A)(2), a first-degree felony, with a major drug offender specification in violation of R.C. 2941.1410(A); Count 4, possession of drugs, in violation of R.C. 2925.11(A), a first-degree felony, with a major drug offender specification in violation of R.C. 2941.1410(A); Count 5, tampering with evidence, in violation of R.C. 2921.12(A)(1), a third-degree felony; Count 6, failure to comply, in violation of R.C. 2921.331(B), a third-degree felony; Count 7, failure to comply, in violation of R.C. 2921.331(B), a fourth-degree felony; and Count 9, possession of criminal tools, in violation of R.C. 2923.24(A), a fifth-degree felony. The other counts within the indictment were associated with Bunton, Cargill, and a fourth individual not associated with the traffic stop, Barbara Diluzio.

**{¶5}** Appellant eventually pled guilty to Count 1, trafficking in cocaine, a first-degree felony, Count 5, tampering with evidence, a third-degree felony, and Count 6, failure to comply, a third-degree felony. As part of a plea agreement, the major drug offender specification associated with Count 1 was nolled, and Counts 4, 7, and 9 were nolled as well.

**{¶6}** Thereafter, the trial court sentenced appellant to a prison term of seven years on Count 1, one year on Count 5, to run concurrent to Count 1, and 18 months on Count 6, to run consecutive to Count 1, for an aggregate prison sentence of eight and one-half years.

**{¶7}** Appellant filed the instant appeal assigning two errors for our review.

I. [Appellant] was denied due process and other rights when his plea was accepted by the [t]rial [c]ourt without expressing on the record promises made to him regarding sentencing.

II. [Appellant's] counsel was ineffective.

## II. Law and Analysis

### A. Plea Agreement

**{¶8}** In appellant's first assignment of error, he argues that his plea was not knowingly, intelligently, and voluntarily entered because the trial court did not place the plea agreement on the record.

**{¶9}** In determining whether the defendant entered a plea knowingly, intelligently, and voluntarily, this court examines the totality of the circumstances through a de novo review of the record. *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7.

**{¶10}** First, we note that appellant does not argue that the trial court failed to conduct the standard plea colloquy as set forth in Crim.R. 11(C). However, appellant does argue that the trial court failed to place the plea agreement on the record as required by Crim.R. 11(F). Crim.R. 11(F) states:

When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court.

{¶11} To this end, appellant argues that his guilty plea did not comply with Crim.R. 11(F) because appellant believed "there was an agreement for cooperation in exchange for a reduced sentence and yet that agreement was nowhere spread upon the record." Appellant's brief at 9. Appellant argues that because the plea agreement was omitted from the record, his plea was not knowing, intelligent, and voluntary.

{¶12} At the plea hearing, the prosecutor and appellant's counsel both outlined their understanding of the plea agreement. As best we can discern from the record before us, this plea agreement consisted of reduced charges by way of amending the indictment in exchange for appellant's plea of guilty. More specifically, the state dismissed the major drug offender specification associated with Count 1, trafficking, and dismissed Count 4, possession of cocaine and the major drug offender specification associated with that count. The state also dismissed Count 7, failure to comply, and Count 9, possession of criminal tools.

{¶13} In our de novo review of the record, we first note that the record indicates that the court complied with Crim.R. 11(C) and properly found that appellant entered a knowing, intelligent, and voluntary plea of guilty to the charges in the amended indictment. Further, the record indicates that both appellant and appellant's counsel stated that no threats or promises had been made. We note the following exchange between the trial court, the prosecutor, and appellant's counsel:

THE COURT: Any threats or promises made?

[Prosecutor]: No, your Honor.

* * *

[Appellant's counsel]:   * * * I have fully discussed all aspects of the case with [appellant].   The discovery has truly been extensive.   We really [have] been working on this plea, or aspects of it for some time.

(Tr. 10.)

{¶14} Furthermore, we note the following exchange between appellant and the trial court:

THE COURT:    Do you, in fact, understand what's happening today in this case?

[Appellant]:    Yes, sir.

THE COURT:    Have any threats or promises been made to you to induce you to change your plea?

[Appellant]:    No, sir.

THE COURT:    Pardon me?

[Appellant]:    No, sir.

THE COURT:    Are you satisfied with the services of your lawyer[?]

[Appellant]:    Yes, sir.

(Tr. 12.)

{¶15} At the sentencing hearing, and prior to the trial court imposing its sentence, the following exchange occurred:

THE COURT:    Have any threats or promises been made to you other than what has been stated in open court on the record today?

[Appellant]:    No, sir.

THE COURT:    And do you understand there's no promise of a particular sentence?

[Appellant]:    Yes, sir.

(Tr. 22-23.)

[Appellant's counsel]: Yes. I would like the [c]ourt to fully understand that prior to the entry of the guilty plea by [appellant] in this case, he had conversations. As a matter of fact, he solicited the police officer I think through his wife and he had private conversations with them [in] which he attempted to prevail upon them to make recommendations for a minimum sentence.

[Appellant] told me that he thought they were going to dismiss all of the charges and I thought the progress toward some sort of resolution was progressing very, very well. As a matter of fact, at one point I was assured that it was going well, but later it turned out that the prosecutor told me that the police were not completely satisfied that they were able to make full use of whatever had been contributed by the defendant. And that the deal, of course, that he thought was on board was not about to take place. [Appellant] indicated to me that he thought it would dismiss all the charges, although I told him I didn't believe that would happen, he nonetheless believed it, as did his wife.

But then [appellant] plead and in the end I was told by the prosecutor that the information that he had provided was somewhat tardy and had it been given at some point earlier, it could very well have benefitted him to a greater degree.

But given the fact that [appellant] made the effort, and certainly there's no indication that the effort was lacking in sincerity, I would hope that the [c]ourt will take all of that into consideration and give [appellant] whatever sentence the [c]ourt deems to be appropriate, but be one that would be close to the very, very minimum sentence that the [c]ourt could give under the circumstances given his efforts to make every effort to cooperate with the police.

(Tr. 29-30.)

{¶16} Furthermore, at the sentencing hearing, the prosecutor provided the following information:

And what happened was [police] encouraged [appellant] to come forward with information very close in time to when this incident happened in April of 2017. [Appellant] repeatedly declined that invitation.

And then after [appellant] was apprehended and this case was indicted [appellant] eventually late — last year late in 2017 [after appellant was indicted], did meet with [police], did provide some information, but as [appellant's counsel] has accurately said, [the information provided] was tardy. So it may be useful background information, but it was nothing that was actionable. Had [appellant] come forward earlier, it may have been something that was actionable or more useful and he may have gotten a greater benefit from that.

In this case he has accepted responsibility. He has received the benefit of that acceptance of responsibility and of his meeting with the officers. We have come off the major drug offender specification, which would have been a mandatory minimum of 11 years [prison].

(Tr. 31-32.)

{¶17} Therefore, to the extent that appellant argues that there was a plea agreement, and that the plea agreement was breached or violated in some way, this assertion is simply not supported by the record. It is clear from the record before us that there existed an opportunity for appellant to cooperate with police. That cooperation in return could have resulted in the possibility of the charges against appellant being dismissed. However, it appears from the prosecutor's and appellant's counsel's statements that appellant failed to fully perform with this opportunity in a timely fashion. As a result of appellant's failure to seize this opportunity, appellant was indicted on the charges stemming from the traffic stop.

{¶18} Nevertheless, we note that the record does reveal that appellant did provide some information to police. Whether or not this information was or was not helpful to investigating officers, we are unable to conclude from the record before us. However, we are able to surmise that, whatever information appellant did provide clearly benefitted appellant. Undoubtedly, appellant benefitted from an amended indictment. As originally charged within the indictment, appellant was facing a mandatory prison sentence of 11 years on Count 1, with the major drug offender specification. Moreover, with regards to Count 6, failure to comply, the trial court was required to run this count consecutive to the trafficking count. As such, appellant was facing a minimum sentence of 11 years and 9 months on Count 1, with the major drug offender specification, and on Count 6, respectively. Therefore, appellant clearly received a benefit.

**{¶19}** "'[I]n order to portray a claimed error of failure to comply with Crim.R. 11(F), it must affirmatively appear in the record that such an 'underlying agreement' existed.'" *State v. Irizarry,* 8th Dist. Cuyahoga No. 94727, 2011-Ohio-607, ¶ 12, quoting *State v. Triplett*, 8th Dist. Cuyahoga No. 68707, 1995 Ohio App. LEXIS 4740 (Oct. 26, 1995), citing *State v. Butler*, 44 Ohio App.2d 177, 337 N.E.2d 633 (3d Dist.1974). "Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect." *Irizarry* at *id*., citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977); Crim.R. 52(A). The test for prejudice is whether the plea would have otherwise been made. *Id.*

**{¶20}** Therefore, the only plea agreement we can discern from the record is that the state amended the indictment in exchange for appellant's plea of guilty. We find that the trial court allowed the parties to sufficiently outline the terms of the plea agreement. Furthermore, appellant can in no way establish that he was prejudiced because he received the benefit of the plea agreement: reduced charges and a reduced sentence. Undeniably, appellant received the benefit of the plea agreement by the amended indictment and reduced sentence.

**{¶21}** In our de novo review of the record, we find that Crim.R. 11(F) was not violated because the plea agreement was, in fact, placed upon the record. As such, we find no evidence within the record that appellant's plea was not knowingly, intelligently, and voluntarily entered.

**{¶22}** Lastly, in our de novo review of the record, we note that the trial judge of record in this matter did not preside over appellant's change of plea hearing. The trial judge of record did, however, impose appellant's sentence in the instant matter. All parties were aware of this procedural arrangement. Moreover, appellant and his trial counsel agreed to this arrangement

and stated that they had no objections to such an arrangement. Consequently, we find that any arguments relative to this arrangement have been waived by appellant.

{¶23} Accordingly, appellant's first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶24} In appellant's second assignment of error, he argues that his trial counsel was ineffective because he failed to spread the plea agreement upon the record.

{¶25} This court has previously noted that under certain circumstances, ineffective assistance of counsel may constitute a manifest injustice warranting the withdrawal of a guilty plea. *State v. Montgomery,* 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4. However, if a defendant enters a guilty plea, he or she waives any claim of ineffective assistance of counsel, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11. "In such cases, a defendant can prevail only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial." *Id*., citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶26} As we noted in our analysis of appellant's first assignment of error, appellant received the benefit of the plea agreement, an amended indictment in exchange for his plea of guilty. As such, we cannot find that appellant's counsel's performance was deficient in any regard.

**{¶27}** Of significant importance to our finding that appellant's counsel's performance was not deficient, we note, again, that appellant was facing a mandatory minimum prison sentence of 11 years and 9 months because the trial court was required to run Count 6 consecutively. Furthermore, appellant could have been sentenced to as much as three years on Count 6, for an aggregate sentence of 14 years on Count 1 and Count 6. This 14-year sentence would not have even included Count 5, tampering with evidence, which carried with it the possibility of a prison sentence of 9 to 36 months, or Count 9, possession of criminal tools, which carried with it the possibility of a prison sentence of 6 to 12 months. If the trial court imposed consecutive sentences on these counts, appellant was facing the possibility of an 18-year prison sentence.

**{¶28}** Accordingly, appellant's second assignment of error is overruled.

### III.   Conclusion

**{¶29}** At the change of plea hearing, the prosecutor and appellant's counsel both outlined their understanding of the plea agreement which consisted of reduced charges by way of amending the indictment in exchange for appellant's plea of guilty. As such, appellant's argument that Crim.R. 11(F) was in any way violated is meritless. Appellant's counsel's performance was not deficient because he successfully negotiated a plea agreement that substantially decreased the maximum prison sentence that could have been imposed upon appellant.

**{¶30}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR